UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MICHAEL KEATING,

                      Petitioner,

      -against-                           **REPORT AND RECOMMENDATION**
                                                           21-CV-4065 (KAM)(LB)

MARK MILLER, SUPERINTENDENT OF
GREEN HAVEN CORRECTIONAL FACILITY,

                      Respondent.

-------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

      Petitioner, Michael Keating, files this *pro se* petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2015 New York Supreme Court, Kings County conviction of Murder in the Second Degree. The Honorable Kiyo A. Matsumoto referred this petition to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

## BACKGROUND

### I.    Underlying Crimes

      According to the evidence adduced at trial,[1] at approximately 10:00 p.m. on September 6, 1997, defendant Michael Keating ("petitioner") shot and killed John Eric Ogaldez on Linden Street between Broadway and Bushwick Avenue in Brooklyn, New York. Trial Tr., ECF No. 6-5 at 9. Earlier that night, petitioner approached Sherlock Alvarez, who was sitting on the steps of

---

[1] Petitioner was tried by a jury in New York Supreme Court, Kings County, from March 5 through March 13, 2015, before the Honorable Alan D. Marrus. Trial Tr. (hereinafter "TT."), ECF Nos. 6-5, 6-6, 7, and 7-1. The trial transcript begins at ECF No. 6-5, page 2, and concludes at ECF No. 7-1, page 570.

1

an abandoned building, an area where Alvarez would "frequent" while selling marijuana. TT., ECF No. 7 at 41–42, 45. Alvarez testified that he was approached by petitioner and another man, who were together known to Alvarez as the "one set of guys…selling crack" cocaine in that area, including near the abandoned building. Id. at 43–44. Petitioner and his companion asked Alvarez, "what the fuck are you doing here," proceeded to go through Alvarez's pockets, and took his marijuana, house keys, and bicycle. Id. at 45–46, 85. Petitioner and his companion grabbed Alvarez by his hands and feet and attempted to take him into the abandoned building. Id. at 45–46.

Alvarez managed to get away from petitioner and the other man. Id. at 46–47. He ran in the direction of Levar Sebastian, Sebastian's brother John Eric Ogaldez, and their cousin Leroy Mendez, who were in the vicinity of the abandoned building at that time. TT., ECF No. 6-5 at 102–06. They saw Alvarez, who "looked beat up real bad." TT., ECF No. 6-5 at 104–05. Sebastian and Alvarez had a conversation, after which the two men began walking towards the abandoned building with Ogaldez and Mendez following behind them. Id. at 106; TT., ECF No. 6-6 at 44–45. Alvarez got into "fighting kind of talk" with petitioner and the "fat guy" who was with petitioner. TT., ECF No. 6-6 at 45–46. Petitioner and the "fat guy" entered the building and then "suddenly" appeared from "behind." Id. at 46–47. Petitioner started shooting at Alvarez. Id. Alvarez ran but petitioner continued to shoot at him. Id. at 47–49. When petitioner stopped shooting, someone said, "that guy too," referring to John Eric Ogaldez. Id. at 49. Petitioner fired two shots at Ogaldez. Id. Ogaldez fell to the ground and died from the gunshot wounds. TT., ECF No. 6-6 at 20, 50, 61.

The New York Police Department ("NYPD") immediately opened an investigation into the shooting of Ogaldez. TT., ECF No. 6-5 at 27. Several years later, on or around November 3,

2

2000, NYPD Detective Marco Martinez received information identifying petitioner as the shooter. Id. at 16; Def.'s Speedy Tr. Mot., ECF No. 6-1 at 5. Detective Martinez also received information confirming that petitioner was in Jamaica. TT., ECF No. 7 at 12–14. In 2003 or 2004, the NYPD began monitoring petitioner's "whereabouts" in Jamaica. TT., ECF No. 6-5 at 136–37. On March 13, 2013, Sergeant Howard Rowe of the Fugitive Apprehension Team of the Jamaican Constabulary Force received an arrest warrant for petitioner and arrested petitioner that day at his address in Jamaica. Id. at 137–40. Petitioner was taken into custody and brought to the United States on April 11, 2013. TT., ECF Nos. 6-5 at 142, and 6-6 at 4–7.

## II.     Relevant Pre-Trial Proceedings

On July 20, 2004, petitioner was indicted on two counts of second-degree murder (P.L. §§ 125.25(1), (2)), one count of second-degree weapons possession (former P.L. § 265.03), and one count of third-degree weapons possession (former P.L. § 265.02(4)). ECF No. 6-7 at 1–2. A decade later, on September 10, 2014, petitioner moved to dismiss the indictment, claiming that the long period of time between the 2004 indictment and 2013, when petitioner was brought from Jamaica and arraigned on the indictment, had deprived him of his right to a speedy trial in violation of the United States Constitution ("speedy trial motion"). Resp't Aff. ¶ 5, ECF No. 6 at 1–29; ECF No. 6-1 at 1–16.

On September 16, 2014, the Honorable Neil Jon Firetog of Supreme Court, Kings County conducted a combined Wade/Huntley hearing to consider petitioner's speedy trial motion and the identification procedures used by the NYPD during its investigation. ECF No. 6-4 at 1–86. Petitioner's speedy trial motion was denied on October 24, 2014. ECF No. 6-3 at 1–2. Petitioner's motion to suppress the identification evidence was denied on January 5, 2015. Resp't Aff. ¶ 16.

### III. Petitioner's Trial

A jury trial was held from March 5 through March 13, 2015 in Supreme Court, Kings County before the Honorable Alan D. Marrus. Trial Tr., ECF Nos. 6-5, 6-6, 7, and 7-1. After both sides rested, the court addressed the jury charge with the parties. Defense counsel requested a charge as to whether petitioner's flight demonstrated consciousness of guilt ("flight charge"), but because the prosecutor did not ask the jury to consider the fact that petitioner had fled to Jamaica, the court declined to include the flight charge. TT., ECF No.7-1 at 156–58. Petitioner was found guilty of murder in the second degree. Id. at 164. On April 13, 2015, petitioner was sentenced to twenty-five years to life in prison. ECF No. 6-7 at 3.

### IV. Procedural History

In or around October 2018, petitioner appealed his judgment of conviction to the Appellate Division, Second Department (hereinafter "Appellate Division") on the following grounds: (1) he was deprived of his constitutional right to a speedy trial due to a post-indictment delay of more than eight years between his indictment and arraignment, ECF No. 6-8 at 36–52; (2) the evidence at trial was insufficient to convict him of second-degree murder, Id. at 53–56; (3) the jury should have been charged as to whether flight demonstrates consciousness of guilt, Id. at 56– 63; and (4) the prosecutor made improper remarks during summation, Id. at 63–73. In a supplemental *pro se* brief,[2] petitioner also claimed his counsel was ineffective, because at the September 16, 2014 suppression hearing, counsel failed to make further unspecified arguments to support suppression of certain identification evidence; failed to object to the admission of hearsay evidence during Detective Martinez's testimony; and failed to use a "wanted" poster to

---

[2] It is unclear when petitioner filed his supplemental *pro se* brief, but it was signed on May 22, 2019.

4

impeach Detective Martinez.³ Petitioner further argued that his counsel was ineffective at trial for failing to object to Detective Martinez's testimony that petitioner was the shooter on the ground that the admission of that evidence violated petitioner's rights under the Confrontation Clause. ECF No. 6-10 at 13, 22, 33–42. The Appellate Division affirmed petitioner's judgment of conviction on May 6, 2020. People v. Keating, 183 A.D.3d 595, 123 N.Y.S.3d 160 (2d Dep't 2020). Petitioner sought leave to appeal to the New York Court of Appeals; his application for leave to appeal was denied. People v. Keating, 35 N.Y.3d 1113 (2020).

**V.  Instant Petition**

Petitioner timely filed this *pro se* petition seeking a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Pet., ECF No. 2. Petitioner challenges his conviction on the same grounds presented to the Appellate Division: (1) violation of his constitutional right to a speedy trial because of long post-indictment delay; (2) insufficiency of the evidence; (3) denial of due process and a fair trial for failing to give a flight charge and the prosecutor's remarks in summation; and (4) ineffective assistance of counsel. Pet. at 5–6; Resp't Aff. ¶ 58. Respondent opposes the petition. See Resp't Br., ECF No. 6 at 30–58.

## DISCUSSION

**I.  Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody

---

³ On August 31, 2018, petitioner also moved to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10 ("440 motion") arguing ineffective assistance of counsel at his suppression hearing, in that counsel failed to use a "wanted" poster to impeach Detective Martinez's testimony and failed to argue that the photo array used to identify petitioner was "unduly suggestive." ECF No. 6-7 at 3 ¶ 13; see also Resp't Aff. ¶ 16 n.5. The court denied petitioner's 440 motion on December 20, 2018. ECF No. 2 at 14–24. Plaintiff did not seek leave to appeal the decision.

5

pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, the reviewing court may only grant a habeas petition if the claim "was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "This is a 'difficult to meet' . . . and 'highly deferential standard[,]'" and review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted). Moreover, a state court's factual findings "'shall be presumed to be correct' unless the petitioner rebuts that presumption 'by clear and convincing evidence.'" Fernandez v. Capra, 916 F.3d 215, 211 n.1 (2d Cir. 2019) (citing 28 U.S.C. § 2254(e)(1)).

A state court decision is "contrary to" clearly established Federal law if the "state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with 'facts that are materially indistinguishable from a relevant Supreme Court precedent,' the state court arrived at a result opposite to the one reached by the Supreme Court." Evans v. Fisher, 712 F.3d 125, 132 (2d Cir. 2013) (quoting Williams v. Taylor, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established Federal law "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. The Court cautions, however, that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Id. at 410 (emphasis in

6

original); see also Grayton v. Ercole, 691 F.3d 165, 174 (2d Cir. 2012) ("[T]he writ may only issue where the state court's application of the law was not only wrong, but unreasonable.") A federal habeas court may only "issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Harrington v. Richter, 562 U.S. 86, 102 (2011).

## II.     Exhaustion and Procedural Default

A petitioner in custody pursuant to a state court judgment must exhaust his state court remedies prior to seeking federal habeas review. 28 U.S.C. § 2254(b)(1); see also Davila v. Davis, 582 U.S. 521, 527 (2017) ("The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'" (citation omitted)). To exhaust state court remedies, the petitioner must satisfy the "fair presentation" requirement. Baldwin v. Reese, 541 U.S. 27, 29 (2004). A petitioner fairly presents a claim only if he "has informed the state court of both the factual and the legal premises of the claim he asserts in federal court," such that the state courts were "fairly alerted" to the claim's federal nature. Bierenbaum v. Graham, 607 F.3d 36, 47–49 (2d Cir. 2010) (citations and internal quotation marks omitted); see also Baldwin, 541 U.S. at 32 ("A litigant can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"); Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009) ("[A] claim is not 'fairly presented' to a state appellate court if discovery of that claim requires the court to 'read beyond a petition or a brief (or a similar document)' and conduct its own review of proceedings below." (quoting Baldwin, 541 U.S. at 32)).

7

In New York, fair presentation of a claim to the Court of Appeals, the state's highest court, requires a petitioner to "include that claim in his letter-application to the Court of Appeals seeking leave to appeal." Carrasco v. Miller, No. 17-CV-7434, 2020 WL 9256469, at *14 (S.D.N.Y. Nov. 13, 2020) (citing Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991)) report and recommendation adopted by 2021 WL 1040473 (Mar. 18, 2021).[4] A claim that is not exhausted which cannot now be raised is considered to be procedurally defaulted. Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (citation omitted).

Procedural default bars federal habeas review of a ground raised to challenge a state court conviction. Id. Procedural default occurs in two ways: (1) a petitioner fails to exhaust state court remedies regarding a claim and the state court would find the claim procedurally barred or (2) a state court rejects a claim on a state law ground that is "independent of the federal question and adequate to support the judgment." Id. (citation omitted). The procedural default doctrine provides that federal courts have no authority to review state court decisions that rest upon adequate and independent state law grounds. Lee v. Kemna, 534 U.S. 362, 375 (2002); see also Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) ("A federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment 'rests on a state law ground that is independent of the federal question and adequate to support the judgment[.]'") (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). "The rule applies with equal force whether the state-law ground is substantive or procedural." Lee, 534 U.S. at 375 (citing Coleman, 501 U.S. at 729); Whitley v. Ercole, 642 F.3d 278, 285 (2d Cir. 2011). It applies "even where the state court has also ruled in the alternative on the merits of the federal claim." Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996) (citing Velasquez v. Leonardo, 898

---

[4] The Clerk of Court is respectfully directed to send petitioner the attached copies of all the unreported cases cited herein.

F.2d 7, 9 (2d Cir. 1990)); Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("Moreover, a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law").

A state law ground is "only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state." Garvey v. Duncan, 485 F.3d 709, 713 (2d Cir. 2007) (quoting Lee, 534 U.S. at 376). The New York Court of Appeals has stated, "where the case law interpreting New York's preservation rule in criminal proceedings displays consistent application in a context similar to the one before us, that rule is firmly established, regularly followed, and hence adequate for purposes of the independent and adequate state ground doctrine." Richardson v. Greene, 497 F.3d 212, 220 (2d Cir. 2007).

Nevertheless, petitioner may obtain federal habeas review of a procedurally defaulted claim, if petitioner demonstrates either "cause for the default and prejudice," or that "failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001) (citing Coleman, 501 U.S. at 748–50).

### III.   Petitioner's Claims

Petitioner raises four grounds for habeas review: 1) a violation of his right to a speedy trial due to a lengthy delay between indictment and arraignment; 2) insufficient trial evidence to establish petitioner's guilt of second-degree murder beyond a reasonable doubt; 3) petitioner was denied due process and a fair trial based on failure to charge the jury regarding flight and on certain remarks made by the prosecutor during summation; and 4) petitioner was denied the effective assistance of counsel. Pet. at 5–6.

9

### a. Speedy Trial

Petitioner claims that the "nearly nine-year post-indictment delay" was unjustifiable, because Jamaican and U.S. law enforcement "knew exactly where [he] was during that period." Pet. at 5. Specifically, petitioner argues that "the delay made it difficult to locate witnesses and gather evidence as nearly everyone who lived in the neighborhood in 1997 was gone." Id. Respondent argues that the Appellate Division rejected petitioner's speedy trial claim on the merits. Resp't Br. at 1–4; see also Keating, 123 N.Y.S.3d at 161–62.

The Sixth Amendment does not provide a specific timetable for when trial must commence against an individual charged with a crime and thus, under the Fourteenth Amendment, there is no specific time frame for due process. Barker v. Wingo, 407 U.S. 514, 522–23 (1972) (describing that the constitutional right to a speedy trial is "slippery" and "amorphous" and therefore cannot be "quantified into a specified number of days or months."). Thus, in determining whether a defendant's constitutional speedy trial rights have been violated, the Supreme Court requires courts to engage in "a balancing test in which the conduct of both the prosecution and the defendant are weighed," and the "balancing test necessarily compels courts to approach speedy trial claims on an *ad hoc* basis." Id. at 530. The balancing test examines: (1) the "[l]ength of the delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and (4) "prejudice to the defendant" from the delay. Id.

No one factor of the balancing test is a "necessary or sufficient condition" to support a finding that a defendant's right to a speedy trial has been violated. Barker, 407 U.S. at 533. Rather, courts must "engage in a difficult and sensitive balancing process" to determine whether a petitioner's right to a speedy trial has been violated. Id. With respect to the fourth Barker factor, namely, prejudice to the defendant, that factor should be assessed in light of the interests

10

that the speedy trial was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Id. at 532.

Applying the Barker factors here, petitioner fails to establish a Constitutional speedy trial violation. First, the length of the post-indictment delay is less relevant considering the seriousness of petitioner's offense. See, e.g., Allen v. Graham, No. 16-CV-1285, 2020 WL 4482674, at *8 ("a lengthy pretrial delay is less likely to be considered a violation of defendant's Sixth Amendment right to a speedy trial because petitioner was found guilty of the serious crime of murder in the second degree."); see also Barker, 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex... charge."). Second, the State showed good cause for the delay including, among other reasons, that the defendant went to Jamaica, and the State could not begin a trial until he was extradited to the United States. Keating, 123 N.Y.S.3d at 161; see also Allen, 2020 WL 4482674, at *8 (finding no violation of clearly established Federal law by a state court's denial of petitioner's speedy trial claim based on a seven-year delay between arrest and indictment); Clinkscales v. Collado, No. 20-CV-3757, 2021 WL 11448463, at *8 (E.D.N.Y. Oct. 12, 2021) (finding no violation of petitioner's right to a speedy trial in part due to a delayed extradition). Petitioner was at liberty throughout this nine-year post-indictment period until his extradition. Keating, 123 N.Y.S.3d at 161; see also Lara v. Lee, No. 19-CV-6338A, 2020 WL 2854255, at *4 (S.D.N.Y. Apr. 29, 2020), report and recommendation adopted, No. 19-CV-6338, 2020 WL 3961968 (S.D.N.Y. July 13, 2020) (finding that petitioner's right to a speedy trial was not violated "in light of the fact that, immediately after the crime, he fled to the Dominican Republic where he had unrestricted freedom, and no oppressive pretrial incarceration….").

11

Although petitioner claims he was prejudiced because people had moved out of the neighborhood, he fails to demonstrate that the long delay impaired his defense. Keating, 123 N.Y.S.3d at 161. Nor has petitioner shown the delay to be "the result of a 'deliberate attempt to delay the trial in order to hamper the defense.'" Smith v. La Clair, 353 F. App'x 486, 488 (2d Cir. 2009) (summary order) (quoting Barker, 407 U.S. at 531). Absent some affirmative showing of specific prejudice, petitioner's claim that the delay weakened his ability to defend himself at trial does not outweigh the other factors in the balancing test. See Doggett v. United States, 505 U.S. 647, 656 (1992) (determining that the government's showing of reasonable diligence could defeat petitioner's speedy trial claim "so long as [the petitioner] could not show specific prejudice to his defense."). Accordingly, petitioner's speedy trial claim should be denied as not contrary to or an unreasonable application of clearly established Federal law. See 28 U.S.C. § 2254(d)(1).

### b. Legal Insufficiency of Evidence

Petitioner claims that he was convicted of second-degree murder on insufficient evidence ("legal insufficiency claim") because the prosecution failed to establish petitioner's identity as the shooter. Pet. at 5. Respondent argues that the legal insufficiency claim is procedurally barred, because petitioner never challenged sufficiency of the trial evidence with respect to the second-degree murder count. Resp't Br. at 5–7.

It is well established that New York's contemporaneous objection rule, codified at N.Y. Crim. Proc. Law § 470.05(2), is an adequate and independent state law ground that bars federal habeas review. See, e.g., Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011); see also Coleman, 501 U.S. 729–30. The New York Court of Appeals has held that the contemporaneous objection rule is applicable to a claim that the trial evidence was legally insufficient to establish a defendant's

12

guilt of a crime. See People v. Gray, 86 N.Y.2d 10 (1995). Thus, petitioner's legal insufficiency claim is procedurally barred from habeas review unless petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 724. Petitioner has shown neither. As the sufficiency of the evidence claim is procedurally barred, the Court should not consider it.

Even if the Court were to reach the merits of petitioner's legal insufficiency claim, petitioner has not shown that the state court's decision was contrary to or an unreasonable application of clearly established Federal law. "[T]o overturn petitioner's state conviction for legal insufficiency of evidence, he must show that no 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Parham v. Griffin, 86 F. Supp. 3d 161, 174 (E.D.N.Y. 2015) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Petitioner fails to demonstrate that the evidence identifying him as the shooter was insufficient such that the jury could not have found him guilty beyond a reasonable doubt. Therefore, even if petitioner's claim was not procedurally barred, the claim would be denied.

### c. Due Process and Fair Trial

Petitioner claims that he was denied due process and a fair trial, because the trial court erred in failing to charge the jury as to whether flight demonstrates consciousness of guilt. Petitioner further claims that during summation, the prosecutor improperly vouched for the credibility of the witnesses and mischaracterized the defense's theory as a conspiracy. See Pet. at 6. The Appellate Division denied these claims based on petitioner's failure to object at trial and thus found that the flight charge claim was unpreserved for appellate review and that the challenge to the prosecutor's remarks was "largely unpreserved" for appellate review. Keating,

13

123 N.Y.S.3d at 162. Respondent argues that because petitioner's claims were unpreserved for appellate review, they are procedurally barred. See ECF No. 6-8 at 56–63. This Court agrees.

Petitioner has not shown good cause for the default and prejudice therefrom, nor has he demonstrated that the failure resulted in a fundamental miscarriage of justice, such as actual innocence. See Bousley v. United States, 523 U.S. 614, 622 (1998); Grey v. Hoke, 933 F.2d 117, 121 (2d Cir.1991). Petitioner does not demonstrate cause and prejudice, nor does he demonstrate actual innocence. Therefore, these claims are procedurally barred. See Robinson v. Cunningham, No. 09-CV-1904, 2011 WL 7046020, at *6 (E.D.N.Y. Jan. 4, 2011), report and recommendation adopted sub nom. Robinson v. Superintendent, Green Haven Corr. Facility, No. 09-CV-1904, 2012 WL 123263 (E.D.N.Y. Jan. 17, 2012).

Even if the claims regarding the flight charge or the prosecutor's remarks were not procedurally barred, petitioner's due process and fair trial claim would be denied. As the state court found, the prosecution never argued that petitioner's flight indicated consciousness of guilt, and therefore, "no such instruction would have been appropriate." Clarke v. Griffin, No. 13-CV-4812, 2017 WL 11571793, at *15 (S.D.N.Y. May 11, 2017).

The state court also held that "the [prosecutor's] challenged remarks either were responsive to defense counsel's summation, constituted fair comment on the evidence, or otherwise do not warrant reversal." Keating, 123 N.Y.S.3d at 162. A prosecutor has broad latitude in making their closing argument. See United States v. Casamento, 887 F.2d 1141, 1189 (2d Cir. 1989). Even where a prosecutor made improper comments in summation, habeas relief is not warranted unless the summation was so fundamentally unfair as to deny the defendant a fair trial. Darden v. Wainwright, 477 U.S. 168, 181 (1986) ("[T]he relevant question is whether the [prosecutor's] comments so infected the trial with unfairness as to make the resulting

14

conviction a denial of due process." (internal quotation marks omitted)). In other words, a petitioner must show "that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." Bentley v. Scully, 41 F.3d 818, 824 (2d Cir. 1994); Martin v. Scully, 748 F.Supp. 159, 165, 167 (S.D.N.Y. 1990) (comments that defense counsel was trying to "bait" the jury or "cloud up [their] minds" were rhetorical comments responsive to defense counsel's characterization of the case as one based on speculation and innuendo).

In determining whether the prosecutor's comments rise to the level of a violation of petitioner's right to due process, the Court considers: (1) the severity of the misconduct; (2) the nature of the curative measures taken to remedy the prejudice, if any; and (3) the certainty of the conviction absent the improper conduct. Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998). Taking these factors into account, the prosecutor's remarks in summation here did not so infect the trial with unfairness as to have a substantial or injurious effect or influence the jury's verdict. Robinson, 2011 WL 7046020, at *6 (finding that the prosecutor's comments in summation were not so egregious as to warrant habeas relief).

Therefore, even if petitioner's due process claims were not procedurally barred, they would be denied as the state court decision was not contrary to or an unreasonable application of clearly established Federal law.

### d. Ineffective Assistance of Counsel

Petitioner claims in a supplemental *pro se* brief and a 440 motion that his counsel was constitutionally ineffective because of "counsel's failure(s) which led to a violation of [p]etitioner's right to a fair trial for the failure to suppress evidence, and a violation of due process of law concerning hearsay from non-testimonial witnesses in violation of the

15

[C]onfrontation [C]lause" ("ineffective assistance claim"). Pet. at 6. The Appellate Division found that petitioner "was not deprived of the effective assistance of counsel." Keating, 123 N.Y.S.3d at 162.

While the 440 motion only raises a claim of ineffective assistance of counsel at the suppression hearing, the supplemental *pro se* brief argues that counsel was ineffective in representing petitioner at both the suppression hearing as well as at trial. Resp't Aff. ¶¶ 50, 54. Petitioner did not seek leave to appeal the state court's denial of the 440 motion but did exhaust the claims raised in his supplemental brief by seeking leave to appeal the Appellate Division's denial to the Court of Appeals. Id. ¶¶ 53, 56. The period for appealing the December 20, 2018 denial of the 440 motion is long expired. See N.Y. C.P.L. § 460.10(4)(a) ("Within thirty days after service upon the defendant of a copy of the order sought to be appealed, the defendant must make application, pursuant to section 460.15, for a certificate granting leave to appeal to the intermediate appellate court."). When there is no procedure available in state court for hearing the unexhausted claim, the claim is deemed exhausted and procedurally barred. See DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (claims deemed exhausted where they could no longer be presented in state court because of petitioner's procedural default may not be heard by the federal courts). Therefore, petitioner's claim of ineffective assistance of counsel at his suppression hearing—at least as it is raised in the 440 motion—is procedurally barred and should not be considered.

Even if the Court could reach the merits of petitioner's ineffective assistance claims (both at the suppression hearing as well as at trial), these claims would be denied. In order to establish a claim of ineffective assistance of counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

16

been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 446 U.S. 668, 694 (1984). In reviewing a claim of ineffective assistance of counsel, a habeas court must apply the "highly deferential" standard set forth in Strickland together with the standard set forth in 28 U.S.C. § 2254(d), and consequently, must be "doubly deferential" to the State court's determination of that claim. See Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

Here, even if petitioner's ineffective assistance claims were not procedurally barred, petitioner does not meet the "doubly deferential" standard for habeas relief under Strickland and the AEDPA. Petitioner does not demonstrate that counsel's performance fell below an objective standard of reasonableness.[5] Where a petitioner's underlying claim "plainly lacks merit," it cannot give rise to a claim of ineffective assistance of counsel. See Aller v. Lape, No. 09-CV-1192, 2011 WL 1827443, at *5 (E.D.N.Y. May 12, 2011); see also Valentin v. Johnson, No. 9:20-CV-1384, 2022 WL 2304172, at *14 (N.D.N.Y. June 27, 2022) (rejecting petitioner's argument that counsel was ineffective for failing to raise a claim the court found to be meritless).

Therefore, even if the Court could consider petitioner's ineffective assistance of counsel claim, it would be denied as the state court decision was not contrary to or an unreasonable application of clearly established Federal law.

## CONCLUSION

Accordingly, it is respectfully recommended that petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 should be denied. As petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability should be issued. 28 U.S.C. §2253; see Lozada v. United States, 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on

---

[5] Petitioner presented no evidence suggesting that his trial counsel's performance was deficient.

17

other grounds by United States v. Perez, 129 F.3d 255, 259-260 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability). It is further recommended that for purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962).

## FILING OBJECTIONS TO THE REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Any request for an extension of time in which to file objections must be made within the fourteen-day period. Failure to timely file an objection to the Report and Recommendation generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: November 17, 2023