UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------X

MICHAEL KEATING,

                         *Petitioner*,

                                        **MEMORANDUM AND ORDER**
                                        **ADOPTING R&R**
   -against-                       21-CV-4065 (KAM)(LB)

MARK MILLER, SUPERINTENDENT OF
GREEN HAVEN CORRECTIONAL FACILITY,
                         *Respondent*.

--------------------------------------X

**KIYO A.  MATSUMOTO, United States District Judge:**

On July 7, 2021, Petitioner Michael Keating ("Petitioner"), proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (ECF No. 2, Petition for a Writ of Habeas Corpus ("Pet.").)  Petitioner challenges his March 13, 2015, conviction in New York state court of murder in the second degree (N.Y. Penal Law § 125.25).  (*Id.*)  Respondent Mark Miller, Superintendent of Green Haven Correctional Facility, who is represented by the Kings County District Attorney's Office, responded to the Petition on August 30, 2021, (ECF No. 6, State's Affirmation in Opposition ("State Opp.") and State's Memorandum of Law in Opposition ("State Mem.")), and Petitioner replied, after receiving an extension from this Court, on November 22, 2021, (ECF No. 10, Petitioner's Reply ("Pet. Reply")).

1

Thereafter, the Court referred the Petition to Magistrate Judge Lois Bloom for a Report and Recommendation ("R & R"). On November 17, 2023, Magistrate Judge Bloom issued a comprehensive and detailed R & R, in which she recommended that the Petition be denied and no certificate of appealability be issued. (*See* ECF No. 12, R & R, at 17.)  After requesting and receiving an extension of time to object to the R & R, Petitioner filed his objections on January 22, 2024.  (ECF No. 14, Petitioner's Objections ("Obj.").)[1]

For the reasons set forth below, the Court respectfully overrules Petitioner's objections and adopt the conclusions of the R & R. The Court assumes the parties' familiarity with the facts underlying the Petition; the history of Petitioner's trial, direct appeal, and collateral proceedings; and the contents of the R & R, to which the Court refers only as necessary to explain this decision.

## DISCUSSION

### I.   Summary of the Case

On March 13, 2015, following a jury trial, Petitioner was convicted in the Supreme Court of the State of New York, Kings County (Marrus, J.), of murder in the second degree.  (R & R at

---

[1] Petitioner is entitled to the benefit of the "prison mailbox rule," which deems the papers of a petitioner who is in custody to be filed as of the date he gave the papers to prison authorities for mailing.  *See Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001) (citing *Houston v. Lack*, 487 U.S. 266, 270-71 (1988)). For the purposes of the instant Order, the court will assume that petitioner gave prison authorities his submission on or before January 16, 2024.

4.)   The trial court sentenced Petitioner to twenty-five years to
life in prison.  (*Id.*)  The Appellate Division, Second Department,
affirmed Petitioner's conviction on May 6, 2020, rejecting his
claims raised both by counsel and in a supplemental *pro se* brief.[2]
*People v. Keating*, 123 N.Y.S.3d 160, 161 (2d Dep't 2020).   The
Court of Appeals (Wilson, J.) denied leave to appeal.   *People v.
Keating*, 158 N.E.3d 550 (N.Y. 2020).

Petitioner's conviction arose out of the fatal shooting of
John Eric Ogaldez in Brooklyn, New York, on September 6, 1997.
(R & R at 1.)  The prosecution presented evidence at trial showing
that Petitioner and another individual approached Sherlock Alvarez
in the vicinity of an abandoned building on the evening of the
murder and accosted Alvarez for selling drugs on "their" property.
(*See* R & R at 1-2, State Opp at ¶19.)  Despite being injured when,
among other things, Petitioner hit him on the head with a gun,
Alvarez was able to flee, and after gathering a group of three
other individuals, including John Eric Ogaldez, Alvarez returned
to the abandoned building.   (R & R at 2, State Opp. at ¶¶19-21.)
After an argument, Petitioner began shooting at Alvarez, who was
able to run away, but subsequently, Petitioner fired two shots at

_____

[2] On August 31, 2018, Petitioner also moved to vacate his conviction pursuant
to New York Criminal Procedure Law § 440.10 (the "§ 440 motion") arguing
ineffective assistance of counsel at his suppression hearing, in that counsel
failed to use a "wanted" poster to impeach a detective's testimony and failed
to argue that the photo array used to identify petitioner was "unduly
suggestive." (State Opp. at ¶50.)  Petitioner's 440 motion was denied by Kings
County Supreme Court on December 20, 2018.  (*Id.* at ¶51.)  Petitioner did not
seek leave to appeal the decision. (*Id.* at ¶53.)

John Eric Ogaldez.  (R & R at 2.)  Ogaldez fell to the ground and died from the gunshot wounds.  (*Id.*)

The NYPD immediately began to investigate the shooting, and subsequently received information identifying Petitioner as the shooter.  (*Id.*, State Opp. at ¶¶5, 29.)  Detectives thereafter learned from a confidential informant that Petitioner was in Jamaica.  (State Opp. at ¶5.)  Petitioner was indicted on July 15, 2004, and New York state authorities began to take steps to prepare the extradition paperwork for submission to the Department of Justice so that Petitioner could be brought to New York for trial.  (State Opp. at ¶5.)  From May 2005 through April 2011, a rotating set of detectives were assigned to handle the case, and the extradition, but each detective retired, went on medical leave, or otherwise did not take the steps necessary to complete the extradition request.  (*Id.*)  Ultimately, the detective assigned in April 2011 was able to gather the required first-party affidavits and signatures for extradition, and submitted the extradition request to the Department of Justice in December 2012 for review.  (*Id.*)  Subsequently, the extradition paperwork was forwarded to the State Department, and Jamaica issued the extradition warrant on March 13, 2013.  (*Id.*)  Defendant waived extradition and was brought back to New York on April 11, 2013, and was arraigned on April 12, 2013.  (*Id.*)

On September 10, 2014, Petitioner moved to dismiss the indictment, claiming that the delay between the 2004 indictment and his 2013 arraignment deprived Petitioner of his constitutional right to a speedy trial. (R & R at 3.) A combined *Wade/Huntley* hearing was held on September 16, 2014, in Kings County Supreme Court to consider Petitioner's speedy trial motion, as well as his separate challenge to the identification procedures used by the NYPD during their investigation. (*Id.*) Petitioner's speedy trial motion was denied on October 24, 2014, and his motion to suppress the identification evidence was denied on January 5, 2015. (*Id.*)

At trial, the prosecution's evidence included, *inter alia*, witness testimony identifying Petitioner as the person who shot Ogaldez, testimony by Alvarez regarding the altercation immediately prior to the shooting and Petitioner's shots towards Alvarez, witness testimony from an individual who witnessed the shooting, and physical evidence from the scene of the crime. (State Opp. at ¶¶23-29.) The prosecution also presented as evidence a statement made by Petitioner to Sergeant Howard Rowe of the Fugitive Apprehension Team of the Jamaican Constabulary Force. (*Id.* at ¶35.) After being notified by Sgt. Rowe that there was a warrant for Petitioner's arrest, Petitioner stated that "at the time of the incident [Petitioner] was young and foolish and that [Petitioner was] glad that there [was] a closure to the incident because [Petitioner] lived his life looking over his shoulder."

(*Id.*)  The defense called one witness, Cheryl Miller, who knew Petitioner from the neighborhood.  (*Id.* at ¶¶37-38.)  Miller testified that she had seen Petitioner in the area prior to the shooting, but never saw Petitioner with a gun, and did not observe any arguments or fights while she was outside on the evening of the shooting.  (*Id.* at ¶¶39-41.)

## II.  Legal Standard

### a. Review of a Report and Recommendation

"When a magistrate judge has issued an R & R and a party makes specific and timely written objections, a district court is to review *de novo* those portions of the report to which objection is made."  *Witherspoon v. Colvin*, No. 18-CV-4816 (DC), 2023 WL 2134873, at *2 (E.D.N.Y. Feb. 21, 2023) (internal quotation marks and citation omitted); *see also* 28 U.S.C. § 636(b)(1).  "The objections of parties appearing *pro se* are 'generally accorded leniency' and should be construed 'to raise the strongest arguments that they suggest.'"  *Reyes v. LaValley*, No. 10-CV-2524 (KAM) (LB), 2013 WL 4852313, at *1 (E.D.N.Y. Sept. 10, 2013) (quoting *Milano v. Astrue*, No. 05-CV-6527 (KMW) (DCF), 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008), aff'd, 382 F. App'x 4 (2d Cir. 2010)).  But "where objections are 'merely perfunctory responses,' argued in an attempt to 'engage the district court in a rehashing of the same arguments set forth in the original petition,'" the standard of review is clear error.  *Ortiz v. Barkley*, 558 F. Supp. 2d 444,

451 (S.D.N.Y. 2008) (quoting *Vega v. Artuz*, No. 97-CV-3775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)).  Upon review of the R & R, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

### b. Federal Review of State Convictions

In reviewing a petition for habeas corpus relief, a federal court may only consider whether a person is in custody pursuant to a state court judgment in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires a federal court reviewing a state prisoner's habeas petition to give deference to a state court's decision on the merits.  *Id.* § 2254(d).  A federal court may not issue a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.*; *see also Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee,* 857 F.3d 466, 477 (2d Cir. 2017).  "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'"  *Vega v. Walsh*,

669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103).

"This deferential standard is higher still for habeas petitions alleging the ineffective assistance of counsel." *Witherspoon*, 2023 WL 2134873, at *2. In general, to prevail on a claim of ineffective assistance, a petitioner must (1) show that counsel's performance was so deficient as to fall below "an objective standard of reasonableness"; and (2) establish prejudice by demonstrating a "reasonable possibility" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In the context of a habeas petition pursuant to 28 U.S.C. § 2254, however, "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks and citations omitted). Therefore, "[t]he operative question" when a federal court reviews "a state court's *Strickland* ruling is thus not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable." *Waiters*, 857 F.3d at 478 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)) (internal quotation marks omitted).

Beyond the aforementioned deferential standard of review, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (internal quotation marks and citation omitted). As a result, federal courts may not review a state court ruling that "fairly appear[s] to rest primarily on state procedural law," so long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted). "Federal courts in this Circuit have repeatedly held that the gatekeeping provisions of New York law governing a petitioner's failure to raise a claim on direct appeal 'represent[] the application of a firmly established and regularly followed' New York rule.'" *Witherspoon*, 2023 WL 2134873, at *2 (quoting *Williams v. Goord*, 277 F. Supp. 2d 309, 318-19 (S.D.N.Y. 2003)).

## III. Application

The instant Petition presents four grounds for relief: (1) violation of Petitioner's constitutional right to a speedy trial because of a lengthy post-indictment delay; (2) insufficiency of the evidence; (3) denial of due process and a fair trial based on the trial court's failure to give a "consciousness of guilt charge" and remarks made by the prosecution in summation; and (4) ineffective assistance of counsel. (Pet. at 5-6; State Opp. at ¶

58.)   In the R & R, Judge Bloom considered whether Petitioner's claims were procedurally barred and then, turning to the merits, concluded that each claim fails.   (R & R at 9-17.)

### a. The Speedy Trial Claim

Regarding Petitioner's speedy trial claim, Judge Bloom determined that, applying the factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), Petitioner "fails to establish a Constitutional speedy trial violation."   (R & R at 11.) Specifically, Judge Bloom found that (1) "the length of the post-indictment delay is less relevant considering the seriousness of petitioner's offense," (2) "the State showed good cause for the delay including, among other reasons, that the defendant went to Jamaica, and the State could not begin a trial until he was extradited to the United States," (3) "Petitioner was at liberty throughout this nine-year post-indictment period until his extradition," and (4) Petitioner "fails to demonstrate that the long delay impaired his defense" or that the delay was "the result of a deliberate attempt to delay the trial in order to hamper the defense." (*Id.* at 11-12.)   As a result, Judge Bloom found that the Appellate Division's merits-based rejection of Petitioner's speedy trial claim was "not contrary to or an unreasonable application of clearly established Federal law." (*Id.* at 12.)

Petitioner objects to Judge Bloom's findings, arguing that Judge Bloom misapplied the law, and failed to probe further into

the reason for the delay between indictment and arraignment. (*Obj.* at 2-5.)

First, Petitioner argues that his case is analogous to *Doggett v. United States*, in which the Supreme Court held that a delay of more than eight years caused by governmental negligence violated the petitioner's right to a speedy trial.   505 U.S. 647, 658 (1992).   This Court does not find Petitioner's comparison persuasive because several factual differences distinguish the present case from *Doggett*.  First, *Doggett* involved drug conspiracy charges, as compared to second-degree murder in the instant case.[3] 505 U.S. at 648; *see also Barker,* 407 U.S. at 531 ("[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.").   Second, the delay in arrest and arraignment in *Doggett* was due to several discrete errors on the part of the government that resulted in the defendant returning to the United States from Colombia without triggering any notification at the border, and subsequently living openly in Virginia for several years.   *Id.* at 649.   In the instant case, Petitioner remained in Jamaica continuously until his extradition had been processed, thus necessitating New York state

---

[3] The Court also notes that, as compared to the general non-capital offense statute of limitations of five years in the Federal system, New York state law includes no statute of limitations for murder.   *See* CPL § 30.10(2)(a); *see also* C.P.L. § 30.30(3) (the New York State Legislature excluded murder and manslaughter from its statutory speedy trial requirements); *see also People v. Wiggins*, 95 N.E.3d 303, 309 (N.Y. 2018) (discussing the inapplicability of CPL § 30.30 to a charge of murder in the second degree).

to take the steps to coordinate with the federal government and the government of Jamaica to secure an arrest warrant. (State Opp. at ¶5.)

Second, Petitioner claims that Judge Bloom failed to "mention or adjudicate" the *Barker* factor of prejudice to the defendant. (Obj. at 3.) Petitioner continues by arguing that the delay between the shooting and his arraignment "made it virtually impossible for any defense to gather evidence or locate witnesses (as nearly everyone who lived in that neighborhood in 1997, vanished)." (*Id.*) As an initial matter, the Court notes that this argument is nearly identical to the argument provided in Petitioner's original claim, which stated that "the delay made it difficult to locate witnesses and gather evidence as nearly everyone who lived in the neighborhood in 1997 was gone." (Pet. at 5.) In any event, Petitioner is incorrect insofar as he claims Judge Bloom failed to consider prejudice to his defense, as the R & R specifically found:

> Although petitioner claims he was prejudiced because people had moved out of the neighborhood, he fails to demonstrate that the long delay impaired his defense. *Keating*, 123 N.Y.S.3d at 161. Nor has petitioner shown the delay to be "the result of a 'deliberate attempt to delay the trial in order to hamper the defense.'" *Smith v. La Clair*, 353 F. App'x 486, 488 (2d Cir. 2009) (summary order) (quoting *Barker*, 407 U.S. at 531). Absent some affirmative showing of specific prejudice, petitioner's claim that the delay weakened his ability to defend himself at trial does not outweigh the other factors in the balancing test. *See Doggett v. United States*, 505 U.S. 647, 656 (1992) (determining that the

> government's showing of reasonable diligence could
> defeat petitioner's speedy trial claim "so long as [the
> petitioner] could not show specific prejudice to his
> defense.").

(R & R at 12.)  As noted by the Respondent in its opposition to
the Petition, Petitioner's allegations regarding an impairment to
his defense are "vague, at best." (State Mem. at 4.)  Petitioner
does not "name any witnesses who he had tried, but failed to
locate," and further, Petitioner "was able to present to the jury
an alibi witness, Cheryl Miller, who testified in great detail
about the circumstances surrounding the shooting and about her
observations of [Petitioner] on the day of the shooting." (*Id.*)
Petitioner points to no indication of significant lapses of memory
on the part of any of the eyewitnesses to the shooting who
testified at trial. *See Barker*, 407 U.S. at 534 ("But there is no
claim that any of Barker's witnesses died or otherwise became
unavailable owing to the delay [and] [t]he trial transcript
indicates only two very minor lapses of memory—one on the part of
a prosecution witness—which were in no way significant to the
outcome.")  In a separate portion of his objection to the R & R,
Petitioner argues that there was "a witness, Elsie Bonilla, who
provided authorities with an affidavit" and could have "been a
witness for the People or the trial defense . . . but for the
People's dilatory want of prosecution." (Obj. at 9.)  Petitioner
only alleges that Ms. Bonilla was not "sought by either party,"

however, not that she was unavailable to testify, and as such, his conclusory allegation does not support a finding of prejudice. (*Id.*)

Finally, Petitioner, faults the R & R for failing to further question the reason for the delay between indictment and extradition. (Obj. at 3-5.)  Regarding the second *Barker* factor, the reason for the delay, Judge Bloom found that "the State showed good cause for the delay including, among other reasons, that the defendant went to Jamaica, and the State could not begin a trial until he was extradited to the United States." (R & R at 11.)  As an initial matter, the Court notes that if Petitioner fled the United States to avoid potential prosecution, then he "has no one to blame for the . . . delay other than himself." *United States v. Cabral*, 979 F.3d 150, 159-60 (2d Cir. 2020).  Petitioner offers no alternative explanation for his departure from the United States shortly after the shooting underlying his present conviction or his failure to return until he was extradited. Further, Respondent offers circumstantial evidence suggesting that Petitioner had reason to believe he might be under criminal investigation, including Petitioner's statements to Sgt. Rowe that he "lived his life looking over his shoulder" and was "glad that there was a closure to the incident" when he was notified of the warrant for his arrest. (State Opp. at ¶35.)  After considering the record, the Court concludes that Petitioner left the United States after

14

he shot John Eric Ogaldez to death and remained abroad for more than ten years, necessitating his extradition to face trial for the victim's murder. Accordingly, the Court agrees with Judge Bloom that the State showed "good cause for the delay." (R & R at 11.)

In light of the above, the Court respectfully overrules Petitioner's objection and accept Judge Bloom's recommendation that Petitioner's speedy trial claim be denied.

### b. Sufficiency of the Evidence

Turning next to Petitioner's claim that he was convicted based on legally insufficient evidence, Judge Bloom determined that the claim was procedurally barred, and nonetheless without merit. (R & R at 13.)

Petitioner objects to Judge Bloom's findings, arguing that he was "unduly prejudiced by . . . fabricated and unsubstantiated evidence" introduced based on alleged misconduct by a detective involved in the investigation. (Obj. at 6.) Specifically, Petitioner takes issue with the identification process in the case, alleging a Wanted poster included a photo of an NYPD detective instead of the Petitioner, and a detective's failure to recall how he received a photo of Petitioner, among other things. (*Id.*) Here, although Petitioner objects to Judge Bloom's findings insofar as he disagrees with the conclusion, he does not refer to any specific portion of Judge Bloom's R & R, or argue that her

conclusion regarding the procedural bar was incorrect.  As such, the Court will review the R & R for clear error, and concludes that there is none.  *See Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (the standard of review is clear error when objections attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition").

The Appellate Division considered Petitioner's claim regarding the sufficiency of the evidence and concluded that it was unpreserved for appellate review.  *People v. Keating*, 123 N.Y.S.3d 160, 162 (2d Dep't 2020).  At trial, although defense counsel did move for an order of dismissal, no specific claims regarding why the evidence was legally insufficient were presented.  (Trial Transcript[4] ("TT") at 460.)  New York courts have regularly found such general objections to be insufficient to preserve a claim for appellate review.  *See, e.g., People v. Johnson*, 85 N.Y.S.3d 585, 587 (2d Dep't 2018) ("defendant made only a general objection to the sufficiency of the evidence [and] [t]herefore, he did not preserve for appellate review his contention that the People failed to adduce legally sufficient evidence to prove his guilt beyond a reasonable doubt").  As such, the Court finds no error in Judge Bloom's conclusion that

---

[4] ECF Nos. 6-5, 6-6, 7, and 7-1. The trial transcript begins at ECF No. 6-5, page 2, and concludes at ECF No. 7-1, page 570.

Petitioner's claim regarding the sufficiency of the evidence was procedurally barred.

Further, even if Petitioner's claim were not procedurally barred, it would clearly fail on the merits, as noted by Judge Bloom.   As discussed further *supra*, the prosecution presented eyewitness testimony at trial identifying Petitioner as the shooter, testimony identifying Petitioner as having shot at Alvarez shortly before Ogaldez was shot, testimony corroborating the sequence of events described by Alvarez, inculpatory statements made by Petitioner to Sgt. Rowe in Jamaica, and physical evidence from the scene of the crime.  Petitioner's arguments about a detective's alleged misconduct surrounding the creation of a wanted poster and the identification of Petitioner, which appear to overlap substantially with the claims made in his *pro se* supplemental submission to the Appellate Division, (ECF No. 6-10, at 23-37), do not undercut the aforementioned evidence or show that the verdict of guilty was against the weight of the evidence. Accordingly, the Court agrees with Judge Bloom that Petitioner has failed "to demonstrate that the evidence identifying him as the shooter was insufficient such that the jury could not have found him guilty beyond a reasonable doubt." The Court overrules Petitioner's objections and adopts the R & R as to the legal insufficiency claim.  (R & R at 13.)

### c. Due Process and Fair Trial

Turning next to Petitioner's claim that he was denied due process and a fair trial because the trial court refused to give a consciousness of guilt charge and the prosecutor included improper remarks in summation, Judge Bloom found both claims to be procedurally barred, and in any event, without merit. (R & R at 13–14.) Petitioner does not directly object to either finding, beyond generally reiterating his point that his counsel was ineffective for not objecting to the trial court's decision not to give the consciousness of guilt charge. (Obj. at 11.)

Because Petitioner has offered no specific objection to the R & R's treatment of this claim, the Court's review of the R & R is, therefore, for clear error. *See Ortiz*, 558 F. Supp. 2d at 451. The Court concludes there was none.

As noted by Judge Bloom regarding the procedural bar, Petitioner has "not shown good cause for the default and prejudice therefrom, nor has he demonstrated that the failure resulted in a fundamental miscarriage of justice, such as actual innocence." (R & R at 14, citing *Bousley v. United States*, 523 U.S. 614, 622 (1998).) Furthermore, even if the claim were not barred, "the prosecution never argued that petitioner's flight indicated consciousness of guilt, and therefore, 'no such instruction would have been appropriate.'" (R & R at 14, quoting *Clarke v. Griffin*, No. 13-CV-4812 (NSR) (JCM), 2017 WL 11571793, at *15 (S.D.N.Y. May 11, 2017), *report and recommendation adopted*, 2020 WL 6365971

18

(S.D.N.Y. Oct. 28, 2020).)   Finally, Judge Bloom correctly found that "the prosecutor's remarks in summation here did not so infect the trial with unfairness as to have a substantial or injurious effect or influence the jury's verdict." (*Id.* at 15.)   This Court concurs with Judge Bloom that the Appellate Division's decision did not unreasonably apply federal law or unreasonably determine the facts in light of the evidence.   *See* 28 U.S.C. § 2254(d). Accordingly, the Court adopts Judge Bloom's findings and denies Petitioner's Due Process and Fair Trial claims.

### d. Ineffective Assistance of Counsel

Judge Bloom next considered Petitioner's claim that he was denied the effective assistance of counsel due to "counsel's failure(s) which led to a violation of Petitioner's right to a fair trial for the failure to suppress evidence, and a violation of due process of law concerning hearsay from non-testimonial witnesses in violation of the confrontation clause." (Pet. at 6.) Judge Bloom noted that though Petitioner's § 440 motion only raised a claim of ineffective assistance of counsel at the suppression hearing, Petitioner's supplemental *pro se* brief in his direct appeal argued that counsel was ineffective in representing petitioner both at the suppression hearing and at trial. (R & R at 16.)   Because Petitioner did not seek to appeal his § 440 motion, and the period to file such an appeal has long since expired, Judge Bloom found that the claim regarding ineffective

assistance of counsel at the suppression hearing, as raised in the § 440 motion, is procedurally barred. (*Id.*) Judge Bloom also noted that the Appellate Division, addressing the claims presented in Petitioner's direct appeal, found that Petitioner "was not deprived of the effective assistance of counsel." (*Id.* at 15 (citing *Keating*, 123 N.Y.S.3d at 162).) Regardless, Judge Bloom found that "even if petitioner's ineffective assistance claims were not procedurally barred, petitioner does not meet the 'doubly deferential' standard for habeas relief under *Strickland* and the AEDPA." (*Id.*)

Petitioner's objections largely restate his arguments made in earlier proceedings and do not object to Judge Bloom's specific findings. Petitioner states that his trial counsel (1) "missed" an opportunity to "object and/or expound on [Sherlock Alvarez's] clearly erroneous testimony," (2) "failed to ascertain that . . . the Wanted poster was generated ***before*** any identification was ever made," (3) "failed to object to testimony concerning allegations of criminal activity, testified to by [Sergeant] Howard Rowe," and (4) "failed to object to trial judge rescinding his first decision concerning the reading of a consciousness of guilt charge to the jury." (Obj. at 7-11 (emphasis in original).) Petitioner does specifically contest the finding regarding the procedural default of his § 440 claim, however, and he states that he was "advised by his appellate counsel . . . to not file his 440 Motion, until she

had reviewed his case," and provides copies of correspondence with counsel. (*Id.* at 12, 15-17.) While Petitioner's objection ends abruptly, it appears he is arguing that he was not aware, and was not advised by counsel, of the requirement to appeal the denial of a § 440 motion to prevent its review from being procedurally defaulted for a habeas claim.

First, regarding Petitioner's specific argument that he was not aware of the exhaustion requirement for a § 440 motion, and that his default should be excused, this Court does not find his argument persuasive. The Second Circuit has held that ignorance does not constitute "good cause" to excuse procedural default in habeas petitions. *See Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993) ("Ignorance or inadvertence will not constitute 'cause.'"); *see also Santiago Gonzalez v. United States*, 198 F. Supp. 2d 550, 554 (S.D.N.Y. 2002) ("*pro se* status and ignorance of the law does not constitute cause"). Furthermore, to the extent Petitioner blames his failure to appeal on advice from an attorney, the Supreme Court has held that "[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Accordingly, Petitioner's objection that his procedural default should be excused is respectfully overruled.

21

Turning next to Petitioner's broader objections regarding Judge Bloom's finding on the merits regarding ineffective assistance of counsel, the Court finds the objections equally unpersuasive. As noted above, Petitioner makes very few references to Judge Bloom's findings, and instead uses his objection to restate the same arguments he made in his underlying supplemental *pro se* brief submitted to the Appellate Division. (*See* ECF No. 6-10). Petitioner similarly argued in that briefing that "[t]rial counsel failed to introduce the wanted poster as impeaching evidence during the cross-examination of Det. Martinez." (*Id.* at 29.) Petitioner likewise points to what he alleges are inconsistencies in Sherlock Alvarez's testimony in that briefing, and criticizes his counsel for failing to follow certain lines of questioning. (*Id.* at 19-22.) The Court notes that Petitioner did not advance these arguments in his original Petition, citing only his counsel's "failure to suppress evidence" and failure to take unspecified action regarding "hearsay from non-testimonial witnesses." "An objecting party may not raise new arguments that were not made before the Magistrate Judge." *Robinson v. Keane*, No. 92-CV-6090 (CSH), 1999 WL 459811, at *4 (S.D.N.Y. June 29, 1999). As such, having reviewed the R & R for clear error, and finding none, this Court would be entitled to adopt Judge Bloom's findings regarding ineffective assistance of counsel in their entirety. However, even if this Court were to review the new

objections *de novo*, they are meritless and would not constitute grounds for habeas relief.

Petitioner first claims that his counsel erred in failing to object to what he alleges was "fraudulent testimony" by Alvarez at trial. (Obj. at 7.) As a threshold matter, the Court notes that the portions of the transcript referenced by Petitioner are from testimony by witness Frank Mendez, and not Alvarez. (TT at 208-223.) The portion of Alvarez's testimony to which Petitioner refers appears to be the following:

> Q: And when do you remember within that 13-year period [starting in 1984] first seeing [Petitioner]; was it 1997? Is that the first year you remember seeing him?
> A: No, sir. I seen him, like I said, when I first moved, when I first came from Belize, I see these guys, but I don't know them by names.

(*Id.* at 389-90.) Mr. Keating alleges that in 1984 he was "attending Mona High School in Jamaica" and thus could not have been in the neighborhood where the shooting occurred. (Obj. at 7.) To the extent Alvarez's testimony was erroneous, which is not clear, as he only states that he did not see Petitioner for the first time in 1997, the failure to spot such an error does not indicate that Petitioner's counsel's performance fell below "an objective standard of reasonableness" or caused Petitioner any prejudice. *Strickland*, 466 U.S. at 688, 694 (1984).

The crux of Petitioner's second claim appears to be that the NYPD, and specifically Detective Martinez, had identified

Petitioner as the likely culprit in the shooting as early as January 1998, and thus, the detective's testimony at the *Wade/Huntley* hearing that he did not have a photo of Petitioner until October 1998 could have been impeached. (Obj. at 10, State Opp. at ¶13.) The Respondent confronted this argument in opposing Petitioner's supplemental *pro se* briefing before the Appellate Division, and argued that:

> Even if defense counsel had elicited from Detective Martinez that he obtained the photograph in January 1998, that testimony would not have changed the result of the *Wade* hearing. Detective Martinez testified that because the incident happened in 1997, he did not recall which family member had given him the photograph of defendant (Martinez: H. 65[5]). Similarly, any discrepancy in Detective Martinez's testimony as to when he obtained the photograph would be due to the length of time between the photographic arrays (October 1998 and September and November 2000) and the Wade hearing (September 16, 2014), and would not show that Detective Martinez was being untruthful.
> Moreover, even if defendant had impeached Detective Martinez with the wanted poster, that impeachment would have no bearing on the suggestiveness of the photo array, a copy of which was in evidence and reviewed by the hearing court (H. 53-54). Thus, defendant's claim that defense counsel was ineffective for failing to use the wanted poster to impeach Detective Martinez at the hearing is meritless.

(ECF No. 6-11, at 13-14.) This Court finds the Respondent's argument persuasive. Petitioner seems to misunderstand the purpose of the *Wade* hearing, which was conducted to determine whether the photo array used to identify Petitioner was unduly

---

[5] The citations referenced are to the transcript of the hearing, which has been filed in the instant action as ECF 6-4.

suggestive – impeaching the detective's testimony as to the source of the photograph was unlikely to have any bearing on that decision. (State Opp. at ¶16.) To the extent Petitioner alleges that the person giving the photograph to the detective had "an ulterior motive" and might be guilty themselves, the Court respectfully rejects such arguments as speculative and without any factual basis. (Obj. at 8.) The Court similarly rejects Petitioner's additional rhetorical questions regarding the detective's investigative process, which are conclusory and speculative. (*Id.* at 9.) Similarly, Petitioner's arguments that portions of the detective's testimony constituted inadmissible hearsay, (Obj. at 8-10), are unavailing, for the reasons stated by the Respondent in its opposition:

> First, Detective Martinez's testimony that--he "received information that the person who did the shooting, his name is Michael Keating" ([TT at 291])--was admissible to explain Detective Martinez's actions in investigating the shooting, in particular, locating defendant's girlfriend, who lived in close proximity to the scene of the shooting (see [State Opp] at ¶¶ 25, 33). Second, Detective Martinez's testimony regarding a report of another detective that in January 1998, defendant was still in Brooklyn ([TT at 306-09]; State's Habeas Exhibit at 18, 36-37) was elicited by defense counsel, apparently in order to support an argument that defendant remained in Brooklyn for four months after the shooting, and that consequently, defendant's moving to Jamaica did not evince consciousness of guilt ([TT at 498-99]).

(State Mem. at 25.)   The Court agrees with Respondent and finds Petitioner's arguments regarding his counsel's allegedly deficient performance in regards to Detective Martinez are without merit.

Turning to Petitioner's third claim – that his counsel was ineffective for failing "to object to testimony concerning allegations of criminal activity, testified to by [Sergeant] Howard Rowe" or request a hearing regarding the prejudice of the testimony, this Court also finds Petitioner's arguments unavailing.  (Obj. at 10.)   Petitioner offers no facts or caselaw supporting his contention that Rowe's statement was overly prejudicial or concerned Petitioner's "propensity to commit crimes."  Furthermore, Petitioner's counsel argued during the pre-trial hearing *Huntley/Wade* hearing that Petitioner's statement to Rowe should be suppressed as an involuntary statement made while in custody.  (ECF 6-4 at 75.)   The trial court disagreed, stating "I do find and I will find that that's a spontaneous statement. While the Defendant may in fact have been in custody, he just was not being questioned by anybody."  (*Id.* at 81.)   Even assuming that counsel could have objected to the prejudicial effect of Rowe's statement, Petitioner has made no showing of a reasonable probability the trial would have had a different outcome. *See Strickland*, 466 U.S. at 694.  As such, Petitioner's contention is without merit.

Finally, turning to Petitioner's objection that he did not receive effective assistance of counsel because his counsel "failed to object to [the] trial judge rescinding his first decision concerning the reading of a consciousness of guilt charge to the jury," the Court finds Petitioner's argument unpersuasive. Here, the Court refers to Judge Bloom's findings regarding the consciousness of guilt charge in the R & R:

> Even if the claims regarding the flight charge or the prosecutor's remarks were not procedurally barred, petitioner's due process and fair trial claim would be denied. As the state court found, the prosecution never argued that petitioner's flight indicated consciousness of guilt, and therefore, "no such instruction would have been appropriate." *Clarke v. Griffin*, No. 13-CV-4812, 2017 WL 11571793, at *15 (S.D.N.Y. May 11, 2017).

(R & R at 14.) Petitioner argues that the prosecutor stated that he "fled to Jamaica shortly after the shooting" in her opening statement, and that the detailed discussion of the extradition process from Jamaica led to the inference that Petitioner had fled. (Obj. at 11.) However, Petitioner made these same arguments previously, which were addressed by the Respondent in his opposition to the petition. (*See* State Mem. at 15-16.) In the absence of any persuasive authority directing this Court to draw a different conclusion, the Court agrees with Judge Bloom's findings regarding the lack of necessity for a consciousness of guilt charge, as discussed *supra*. Accordingly, because the trial

court did not err in declining to provide the charge to the jury, Petitioner's counsel did not err in failing to object.

Because Petitioner has not shown his counsel committed any cognizable errors, the Court respectfully overrules his objections and adopts Judge Bloom's well-reasoned recommendations in their entirety.

## CONCLUSION

For the reasons set forth above, Petitioner's objections are overruled and Magistrate Judge Bloom's well-reasoned and thorough Report and Recommendation is adopted in its entirety as the opinion of the court.  Accordingly, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and dismissed in its entirety.  Because Petitioner has not made a substantial showing of the denial of any constitutional right, a certificate of appealability will not issue.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (discussing certificate of appealability standard); Rules Governing Section 2254 and 2255 Cases, Rule 11 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.").

The Clerk of Court is directed to enter judgment in favor of Respondent and close this case.  In accordance with 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this order would not be taken in good faith and thus denies in forma pauperis

status for the purposes of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully requested to serve a copy of this Order and the Judgment on Petitioner and note such service on the docket by February 1, 2024.

**SO ORDERED.**

_____
**Hon. Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York

Dated:   January 31, 2024
         Brooklyn, New York